Argued and submitted July 25, affirmed September 8, 1980

In the Matter of the Compensation of

## CRAMPTON,
*Petitioner,*

*v.*

## BULLIS,
*Respondents.*

(WCB No. 78-7402, CA 17055)

616 P2d 562

C. H. Seagraves, Jr., Grants Pass, argued the cause for petitioner. With him on the brief was Myrick, Coulter, Seagraves & Myrick, Grants Pass.

Carlyle F. Stout, III, Medford, argued the cause for respondents. On the brief were Robert H. Grant, and Grant, Ferguson & Carter, Medford.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

BUTTLER, J.

**BUTTLER, J.**

In this workers' compensation case three issues are presented: (1) whether claimant was an employee of the respondent; (2) if so, whether the injury occurred within the course and scope of that employment, and (3) if the answer to the first two questions is affirmative, whether the failure of the claimant to give notice to the employer within 30 days of the injury as required by ORS 656.265 requires that the claim be denied.

The referee found that claimant was an employee of respondent and was injured in the course and scope of her employment, but that her failure to give notice within 30 days was prejudicial to the employer and approved the denial of the claim.

The Board agreed that an employment relationship existed between claimant and respondent. It found, however, that the injury did not occur within the course and scope of that employment. The Board affirmed the denial of compensation on that ground and did not reach the notice issue. We affirm.

The claimant, who was 15 years old at the time of the injury, claims to have been employed by respondent to care for and exercise her horses and to clean stalls in exchange for room and board, $10 per week and show clothes for horse shows if she rode respondent's horses in them. She claims to have begun work on June 6, 1976, and continued until June 20, 1976, the day of the injury. Respondent denied the employment relationship and claims to have been acting only as a "good neighbor" in allowing claimant to visit and ride her horses.

On the day before the injury claimant had a discussion with respondent's neighbor, Hodges, who needed someone to exercise his horses. Either claimant asked, or was asked by, Hodges to exercise his horses. Whichever way it happened the agreement was between claimant and Hodges. At Hodges' request

respondent drove claimant over to Hodges' house on Saturday, June 19, and then left. Claimant rode two of Hodges' horses that day. At 9:00 a.m. on the next day, Sunday, Hodges picked up claimant and drove her to his house. While she was riding one of his horses, it fell, injuring claimant.

■  The testimony was conflicting, particularly with respect to the existence of an employment relationship, and we defer to the referee's determination that claimant was more credible than was respondent. *See Miller v. Granite Construction Co.,* 28 Or App 473, 559 P2d 944 (1977); *Bailey v. Morrison-Knudsen,* 5 Or App 592, 485 P2d 1254 (1971). Claimant testified that there was an explicit agreement that she do specific work for specific compensation, under the direction of respondent. Accepting that testimony as credible, we conclude, as did the referee and the Board, that an employment relationship existed. See ORS 656.005(16) and (30).

■  Whether the injury occurred within the course and scope of claimant's employment, however, does not depend on disputed facts. Even accepting claimant's version of what happened, we know only that Hodges asked her if she wanted to exercise his horses and she agreed. The respondent drove claimant to Hodges' house on Saturday at Hodges' request and then left. On Sunday, the day of the injury, Hodges picked claimant up. There was no talk of compensation between any of the parties involved. Apparently claimant had no set hours during which she was to work for respondent, but she had spent the previous weekend at home rather than on the respondent's ranch. There is nothing in the record to indicate that respondent had any control over what claimant did with her weekends. The injury occurred on Sunday morning.

In *Jordan v. Western Electric,* 1 Or App 441, 443-44, 463 P2d 598 (1970), we set forth the factors to

be considered in determining whether the injury arose "out of and in the course of employment":

" 'a)    Whether the activity was for the benefit of the employer, * * *;

" 'b)    Whether the activity was contemplated by the employer and employee either at the time of hiring or later, * * *;

" 'c)    Whether the activity was an ordinary risk of, and incidental to, the employment, * * *;

" 'd)    Whether the employee was paid for the activity, * * *;

" 'e)    Whether the activity was on the employer's premises, * * *;

" 'f)    Whether the activity was directed by or acquiesced in by the employer, * * *;

" 'g)    Whether the employee was on a personal mission of his own, * * *.' " (Citations omitted.)

In *Haugen v. SAIF,* 37 Or App 601, 588 P2d 77 (1978), we said:

"* * * It is not necessary that all of these criteria be satisfied. *See, e.g., Olsen v. SAIF,* 29 Or App 235, 562 P2d 1234 (1977); *Jordan v. Western Electric, supra.* Because of the multitude of employment situations that exist, it is impossible to formulate precisely how to weigh each of the *Jordan* criteria, particularly in those situations where some, but not all the factors, are to a degree present. Such situations necessarily must be decided on a case by case basis."

Here, no benefit to respondent resulted as far as the record shows; claimant was not paid for riding Hodges' horses; she rode on Hodges' and not respondent's premises, and did so on a weekend when she was apparently free to do as she wished. The only reasonable conclusion is that she was on a mission of her own. Although the respondent knew about the activity and acquiesced in it, she did not direct it and there is nothing in the record to indicate that she had control over it.

Affirmed.