Submitted on record and briefs October 15, reversed and
remanded with instructions December 30, 1981

In the Matter of the Compensation of
Robert K. Hedlund, Claimant.

HEDLUND,
*Petitioner,*
*v.*
STATE ACCIDENT INSURANCE FUND
CORPORATION,
*Respondent.*

(No. 79-09967, CA A21495)

637 P2d 1329

Robert K. Udziela and Pozzi, Wilson, Atchison, Kahn &
O'Leary, Portland, filed the brief for petitioner.

Darrell E. Bewley, Appellate Counsel, State Accident
Insurance Fund Corporation, Salem, filed the brief for
respondent.

Before Gillette, Presiding Judge, and Roberts and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Claimant appeals from an order of the Workers' Compensation Board that deleted a referee's award of temporary total disability compensation and *sua sponte* reduced the amount of fees awarded to his attorney. We reverse and reinstate the referee's order.

Claimant suffered a compensable injury in March, 1978, when he was involved in a sewer cave-in while working as a pipe-layer. A fellow worker was killed. On the basis of the physical injuries claimant received in that accident, he was awarded temporary total disability to August 20, 1978, by a determination order dated October 26, 1978.

SAIF reopened the claim in August, 1979, after claimant began seeing Dr. Mighell, a psychiatrist, for treatment. Claimant complained of inability to work and, specifically, that he was unable to work near ditches. Dr. Mighell concluded that claimant was suffering from a traumatic neurosis directly traceable to the cave-in incident so that he could no longer work as a pipe-layer; he suggested that claimant could work productively in another line of work. Claimant was seen by two other psychiatrists and a clinical psychologist. All agreed that his psychological condition was related to the original accident.

The aggravation claim was closed by a second determination order, dated April 16, 1980, which awarded temporary total disability from August 23, 1979, to March 19, 1980. The order did not award claimant any permanent partial disability.

Claimant requested a hearing. The referee held that claimant was entitled to 30 percent unscheduled permanent partial disability. He also awarded claimant additional temporary total disability from February 1, 1979, to August 22, 1979, less time worked. Finally, the referee awarded claimant's attorney 25 percent of the temporary total disability award, not to exceed $750, and 25 percent of the permanent partial disability award, the total fee not to exceed $2,000. SAIF appealed to the Board, which affirmed

the permanent partial disability award, deleted the additional temporary total disability award made by the referee and reduced claimant's attorney's fees award to a maximum of $1,250. This appeal followed.

■ Claimant first asserts that the Board erred in deleting the referee's award of temporary total disability for the period between February 1 and August 22, 1979. He argues that a preponderance of the evidence proves that he was unable to and did not work during that period due to his compensable injury. SAIF argues that 1) the medical evidence shows only that claimant was unable to return to his work *as a pipe-layer;* 2) the record supports a finding that claimant did work during the relevant period; and 3) no medical evidence exists to show that claimant first developed his disabling symptoms in February, 1979, inasmuch as he did not seek treatment for the aggravation until August of that year.

The evidence supports the referee's conclusion that the aggravation of claimant's earlier compensable injury began in February, 1979. Dr. Mighell wrote, "[Claimant] has not worked since February, 1979. I feel that he has been suffering from temporary total disability since this time * * * ." SAIF offered no testimony to dispute Dr. Mighell's conclusion. It merely points out that claimant did not see any doctor until August, 1979, and so there is no first hand evidence that he was actually suffering from the disability in February. We hold that claimant's history as he gave it to Dr. Mighell (and, later, another doctor) to the effect that he last worked in January, 1979, and that his symptoms began at that time, combined with Dr. Mighell's conclusion that claimant had been suffering from his disabling condition since that time, preponderates in favor of extending the period during which claimant was entitled to temporary total disability payments.

SAIF argues that claimant was not entitled to temporary total disability compensation, because he was fit for other forms of employment during the relevant period. SAIF points to a comment in Dr. Mighell's initial evaluation that claimant worked as a "backfill man" for the first six months of 1979. It also points to another of his comments to the effect that it "would be helpful" for claimant to return to work.

■     We first point out that a preponderance of the evidence indicates that claimant's work history in 1979 was limited to two very brief, unsuccessful attempts at returning to construction work.[1] Although claimant apparently told Dr. Mighell initially that he had worked for six months in 1979, both Dr. Mighell and a psychologist, Dr. Quan, indicate in their written reports of later meetings with claimant that his work history in 1979 was limited to one or two very brief, unsuccessful attempts at return to construction work. Claimant also testified before the referee that he had worked only two days in May and three days in August, 1979. SAIF did not provide evidence to the contrary.[2] We conclude from the entire record that the statement contained in Dr. Mighell's initial report that claimant worked six months during 1979 was in error.

■     Claimant's failure to work at some job other than his usual profession during the period before his condition became stabilized does not affect his entitlement to temporary total disability compensation, which is "compensation for loss of income until claimant's condition becomes stationary in order to enable a claimant to support self and family during that period." *Taylor v. SAIF,* 40 Or App 437, 595 P2d 515, *rev den* 287 Or 477 (1979). ORS 656.005(21) defines "medically stationary" to mean

> " 'Medically stationary' means that no further medical improvement would reasonably be expected from medical treatment or the passage of time."

A temporary total disability award is intended, therefore, to compensate an injured worker at least until it is determined to what extent he may be expected to recover from his injury. It would not be reasonable to require a claimant to train for or adapt to a new line of work while his ability to return

---

[1] The fact that a worker is capable of working a few hours at a time at light work does not affect the right to temporary total disability payments. *Vader v. SIAC,* 163 Or 492, 98 P2d 714 (1940).

[2] The referee made no finding that claimant's testimony was less than credible; we assume from the nature of the order he entered that the referee believed that testimony. *See Locke v. SAIF,* 21 Or App 725, 726, 536 P2d 534 (1975).

to his usual line of work is not yet determined. The Board erred in doing so.[3]

The Board also decreased the referee's award of attorney's fees. It stated:

"* * * The Board reverses that portion of the referee's order which awarded increased temporary total disability. *Because of this modification,* the Referee's order is further modified to provide that claimant's attorney's fee, payable from claimant's increased compensation, shall not exceed $1,250." (Emphasis supplied.)

The Board's decision to decrease attorney's fees was based on its deletion of the increased temporary total disability award. Because we hold that the Board erred in deleting the additional award, we also hold it erred in reducing the award of attorney's fees.

Reversed and remanded with instructions to reinstate the referee's order.

---

[3] Claimant was not avoiding work during the period of his temporary total disability. He twice attempted to return to his usual line of work but was prevented by his psychological condition from remaining on the job. When Dr. Mighell suggested that he seek work in another field, claimant unsuccessfully sought employment as a longshoreman. SAIF does not argue that claimant was, either at the time of his injury or at the time presently under consideration, qualified for immediate entry into some other line of work.