Argued and submitted February 19, reversed and remanded
with instructions July 21, 1982

In the Matter of the Compensation of
Thomas E. Humphrey, Claimant.

HUMPHREY,
*Petitioner,*

*v.*

STATE ACCIDENT INSURANCE FUND
CORPORATION,
*Respondent.*

(No. 80-02689, CA A22799)

648 P2d 367

Dwight Ronald Gerber, Florence, argued the cause and filed the brief for petitioner.

Darrell E. Bewley, Appellate Counsel, State Accident Insurance Fund Corporation, Salem, argued the cause and filed the brief for respondent.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

YOUNG, J.

## YOUNG, J.

The issues in this worker's compensation case are 1) whether claimant's epididymitis is compensable and 2) if so, whether the period for which temporary total disability was awarded was correctly assessed.

Claimant was injured in a car accident November 30, 1979, while he and his employer were traveling to a job site. He was thrown from the vehicle and suffered multiple contusions and bruises to the hip and back area. The State Accident Insurance Fund (SAIF) accepted responsibility for medical treatment resulting from those injuries but denied that claimant's epididymitis was causally related to the accident. The referee reversed SAIF's denial, finding the epididymitis compensable, and ordered that temporary total disability benefits be awarded for the period of December 1, 1979, through December 9, 1979, assessed a penalty for delay in payment and awarded attorney fees. The Workers' Compensation Board (Board) upheld SAIF's denial, reversed claimant's award of attorney fees and affirmed the remainder of the referee's order.

Whether claimant's epididymitis was compensable is a fact question of medical causation. The medical experts agreed that, when epididymitis is caused by trauma, it is common for the symptoms to appear seven to ten days following the trauma. The question of causation, therefore, depends on a determination of the time claimant began to experience the problems associated with epididymitis. The referee found:

> "The medical evidence in this case all points in the same direction. In short, if the history given to Dr. Collins to the effect that right testicular pain came on within a week or so after the accident is believed, the epididymitis is compensable. If the symptoms came on later, it is not compensable. By the credible testimony of the claimant, his mother, his wife, and his father, I conclude that the epididymitis is compensable."

The Board accepted the referee's findings of fact but rejected the conclusion regarding compensability.

> "The preponderance of the evidence is that claimant made no complaint of his symptoms *to any physician* until two months after his industrial injury. Therefore, the

denial of compensability will be upheld." (Emphasis added.)

In reaching its conclusion, the Board necessarily rejected the testimony of claimant, his wife, his mother and his father. It is also evident that the Board erroneously focused the inquiry on the time that claimant registered a complaint with a physician, rather than on the time when the symptoms actually manifested themselves. We have repeatedly held that, in exercising *de novo* review, we defer to the referee's determination of credibility because of his opportunity to observe the witnesses. *Anfilofieff v. SAIF,* 52 Of App 127, 131, 627 P2d 1274 (1981); *Crampton v. Bullis,* 48 Or App 179, 182, 616 P2d 562 (1980); *Miller v. Granite Construction Co.,* 28 Or App 473, 477, 559 P2d 944 (1977).

■ The Board accepted the referee's findings of fact. It does not point to any inconsistencies in claimant's or his witnesses' testimony that would indicate unreliability. There is no persuasive evidence in the record that undermines claimant's evidence concerning the onset of epididymitis symptoms or the explanation for his delay in seeking treatment. He saw his family physician, Dr. McLean, twice in the four days following the accident. No specific complaint of epididymitis was made at either time, but that would be consistent with the medical evidence that symptoms may not occur until several days after the trauma. Claimant was also taking pain medication at the time and was experiencing severe discomfort in the lower back area. Claimant testified that when the symptoms of epididymitis appeared, he did not seek immediate medical assistance, because he could not foresee how the medical bills would be paid.

The fact that there is conflicting evidence as to when claimant complained of his condition to a physician is not conclusive on the question of causation, because the medical experts agreed that if the symptoms appeared within seven to ten days of the accident, the epididymitis was related to the accident. The record does not include any other explanation for the epididymitis. We find the testimony of claimant and his witnesses persuasive. Accordingly, we find that claimant carried his burden of proving

by a preponderance of the evidence that the epididymitis is compensable.

■ Claimant next assigns as error the referee's award of total temporary disability only for the period of December 1, 1979, through December 9, 1979. He argues that the period should be extended to February 12, 1980. Claimant attempted to return to work for his employer but was unable to continue after working one day, due to disabling pain caused by the epididymitis.[1] He also trained as a truck driver for six days, without pay, but was forced to discontinue, because of pain, by February 2, 1980. The epididymitis cleared up by February 12, 1980.

Temporary total disability has been defined as "* * * compensation for loss of income until claimant's condition becomes stationary in order to enable a claimant to support self and family during that period." *Taylor v. SAIF*, 40 Or App 437, 440, 595 P2d 515, *rev den* 287 Or 477 (1979).

It is not clear from the record when claimant was formally released to return to work.[2] However, there is no dispute that claimant's attempt to return to his previous employment was unsuccessful. It is also clear that he tried to work as a truck driver and completed six days of training, but was thwarted in his efforts because of his physical condition. SAIF argues that because no statement of work restriction appears on claimant's medical reports and because he applied for unemployment compensation, he was capable of gainful employment. Claimant applied for unemployment benefits because he had no other source of income, and his application was rejected because he was not actively looking for a job. Furthermore, the urologist who treated claimant's epididymitis advised him to "stay off work" until his condition cleared.

---

[1] There is some conflict as to whether claimant returned to work on December 10, 1979, or December 12, 1979.

[2] The referee's findings of fact state:

"It was the claimant's understanding that he was released to return to work on January 11, 1980. The medical record does not support or deny this."

Dr. McLean, the original treating physician, whose notes the referee described as "cryptic at best," made the following entry on claimant's record:

"Final 1/11/80"

We find from a preponderence of the evidence that claimant's work history from November 30, 1979, to February 12, 1980, was limited to two brief attempts to rejoin the work force. The fact that he was able to work sporadically does not negate the conclusion that he was incapable of working regularly at a gainful and suitable occupation. *Hedlund v. SAIF*, 55 Or App 313, 637 P2d 1329 (1981); *Vader v. State Ind. Acc. Com.*, 163 Or 492, 98 P2d 714 (1940). Accordingly, we find that the award of temporary total disability benefits should be extended from December 9, 1979, to February 12, 1980.[3]

Reversed and remanded to reinstate the referee's order as modified by this opinion.

---

[3] Temporary total disability benefits are often awarded "less time worked" in a situation where the worker is able to work sporadically. Such a deduction would not be appropriate here, because claimant was not compensated for his days of driver training.