Argued and submitted March 30, affirmed July 27, 1983

In the Matter of the Compensation of
Kenneth E. Awmiller, Claimant.
## GEORGIA PACIFIC CORPORATION,
*Petitioner,*

*v.*

## AWMILLER,
*Respondent.*

(WCB No. 80-11632; CA A25868)

666 P2d 1379

Deborah S. MacMillan, Portland, argued the cause for petitioner. With her on the brief were Frank A. Moscato, and Moscato & Meyers, Portland.

Lann D. Leslie, Eugene, argued the cause for respondent. With him on the brief were Keith Y. Boyd, and McGavic & Boyd, P.C., Eugene.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

**ROSSMAN, J.**

Employer appeals from an order of the Workers' Compensation Board affirming the referee and holding employer responsible for a penalty and attorney fees for delay in submitting the claim to the Evaluation Division and for terminating temporary total disability payments without authorization from the Evaluation Division. We affirm.

Claimant injured his lower back on February 4, 1977, while working on the green chain. On July 11, 1977, he was released to work with restrictions of no prolonged standing and no lifting over ten pounds. On Dr. Robertson's recommendation, he was enrolled in a vocational rehabilitation program in business and management at Lane Community College. On April 7, 1978, Dr. Robertson, in a report to employer, noted that claimant's condition had not changed in several months and stated: "His back condition should remain stable as long as he takes care of himself." Employer was notified that the vocational rehabilitation program terminated in December, 1979. On completion of the program, claimant immediately took a job with a new employer as a lumber salesman. There is no record of employer's requesting claim closure. However, because the Evaluation Division notified employer on January 11, 1980, that a "current orthopedic examination" was required, we assume that a request was made. On February 1, 1980, Dr. Robertson reported that claimant was medically stationary and that his claim should be closed. Employer did not resubmit the claim for closure. On May 30, 1980, Dr. Robertson authorized time loss for claimant.

On August 22, 1980, Dr. Robertson recommended in a chart note that "he be released back to work on Mon. August 25." Based on this report and on its own interpretation of ORS 656.268(2), employer unilaterally terminated time loss payments as of August 25. Employer did not seek claim closure from the Evaluation Division until five months after this termination. Employer's attorney stated at the hearing: "There is no explanation for the delay in processing that claim from time of closure." The referee summarized his understanding of employer's position as follows:

"* * * I understood defendant to say that there was, there was no defense for the delay in processing this case for closure.

"Does the defense have any additional remarks at this time?"

Employer's attorney replied, "No additional." A determination order was finally issued on February 6, 1981, awarding TTD and 10 percent permanent unscheduled disability. The referee awarded additional TTD from August 25, 1980, to February 6, 1981, and 25 percent of that TTD as a penalty, plus attorney fees.

ORS 656.268(2) states, in pertinent part:

> "When the injured worker's condition resulting from a disabling injury has become medically stationary, unless the injured workman is enrolled and actively engaged in an authorized program of vocational rehabilitation, the insurer or self-insured employer shall so notify the Evaluation Division, the worker, and employer, if any, and request the claim be examined and further compensation, if any, be determined. * * * If the attending physician has not approved the worker's return to the worker's regular employment, the insurer or self-insured employer must continue to make temporary total disability payments until termination of such payments is authorized following examination of the medical reports submitted to the Evaluation Division under this section."

Two separate grounds were given by the referee and are relied on by claimant to support imposition of a penalty against employer under this statute.[1] The first is employer's failure to seek claim closure in a timely fashion. Under the provisions of ORS 656.268(2), claim closure must be sought by the employer when a claimant becomes medically stationary, unless the claimant is then enrolled in a vocational rehabilitation program, in which case closure must be sought as soon as the vocational rehabilitation program has been completed. The evidence in this case is that claimant was medically stationary before the termination of his vocational rehabilitation program. Employer was notified on December 14, 1979, that claimant had completed the program, yet no determination order was issued in this case until February 6, 1981. Employer offered no explanation or defense for the delay at the hearing.

Employer failed to process this claim as required by statute. The omission resulted in a delay of over a year in a

---

[1] The Board appears to have relied only on the second basis in affirming the referee.

determination of the extent of permanent partial disability. Employer unreasonably delayed payment of compensation and, therefore, claimant is entitled to a penalty and attorney fees under ORS 656.262(9).[2]

■  The second ground asserted in support of the imposition of the penalty is employer's unilateral termination of TTD. Employer argues that it was justified in terminating TTD, because it received a chart note from Dr. Robertson which stated: "Recommend he be released back to work on Mon. August 25," which constituted a release for return to "regular work," thus authorizing termination of TTD payments under ORS 656.268(2). Employer ignores the plain language of the statute. The statute does not authorize unilateral termination of TTD payments if the claimant returns to *any* type of work. Such termination is authorized only if the attending physician approves "the worker's return to the *worker's* regular employment." (Emphasis supplied.) ORS 656.268(2).[3] Unless the treating physician releases a claimant for return to the job that he held at the time of his injury, a claimant has not been released to return to *his* regular employment, and an employer may not unilaterally terminate time loss benefits but must submit the case for closure to the Evaluation Division.

■  The danger in allowing an employer unilaterally to terminate time loss is amply illustrated in this case. Claimant was not released to return to his former employment. It is unclear what restrictions were placed on claimant's return to

---

[2] Claimant does not appeal the referee's failure to award a penalty for the delay in closure prior to termination of TTD. We make no finding as to whether such a penalty would have been appropriate.

[3] Employer relies on OAR 436-65-004(15), which states:

"'Regular' in reference to an occupation means fulfilling the requirements of the job day after day and for the full number of hours required; * * *"

and OAR 436-65-010(7), which states:

"A worker who has not been authorized by the worker's treating physician to return to regular employment shall be paid compensation until the determination order has been issued pursuant to ORS 656.268, unless the worker actually returned to work."

If employer is correct in its interpretation of these administrative rules, they establish a standard for unilateral termination of temporary total disability which is not authorized by the statute.

work, and employer made no effort to have the release clarified. Employer terminated time loss but failed to seek claim closure for over five months thereafter, thus terminating all of claimant's benefits without any review for a significant period of time. The referee and the Board properly awarded a penalty and attorney fees against employer.

Affirmed.