Argued and submitted April 5, 1985, reversed and remanded with instructions
February 26, 1986

In the Matter of the Compensation of
Sharon Bracke, Claimant.

BRACKE,
*Petitioner,*

*v.*

BAZA'R, INC.,
*Respondent.*

(83-02130; CA A33433)

714 P2d 1090

Eugene L. Parker, Portland, argued the cause for petitioner. With him on the brief were Parker & McCann, Portland.

Scott M. Kelley, Portland, argued the cause and filed the brief for respondent.

Before Gillette, Presiding Judge Pro Tempore, and Van Hoomissen and Young, Judges.

YOUNG, J.

## YOUNG, J.

Claimant seeks review of an order of the Workers' Compensation Board which modified the referee's award of temporary total disability (TTD), penalties and attorney fees. Claimant argues that the Board erred (1) in holding that, once employer had been ordered to accept her denied claim, employer could unilaterally determine when claimant became medically stationary; (2) in finding claimant medically stationary as of September 12, 1978; and (3) in reducing the referee's award, made pursuant to ORS 656.262(10), of penalties and attorney fees. We reverse and remand.

Claimant worked as a meat wrapper for Baza'r until March 30, 1977. She also worked part-time as a meat wrapper for Albertson's and Thriftway until May 14, 1977. She quit working as a meat wrapper, because she was suffering from "meat wrappers' asthma," a form of reactive airway disease caused by exposure to polyvinyl chlorides (PVC) and thallic anhydride. She filed a claim against Baza'r in January, 1978, which was denied in March, 1978. The referee upheld Baza'r's denial, and the Board affirmed. The Supreme Court held that claimant had become disabled on January 12, 1977, from a compensable disease which was the responsibility of Baza'r and its insurer. *Bracke v. Baza'r,* 293 Or 239, 646 P2d 1330 (1982).

On April 4, 1983, the Supreme Court's mandate issued. On April 12, the insurer requested claim closure. On April 20, the insurer paid claimant TTD in the amount of $1,976.04, for the period March 30, 1977, through June 30, 1977. The claim was closed by a May 12, 1983, determination order that granted claimant TTD from January 12, 1977, through March 30, 1977. In June, 1983, after pulmonary tests, Dr. Keppel determined that claimant had persistent reactive airway disease, which was not present before her work as a meat handler. Claimant's attorney supplied that information to the Workers' Compensation Department. As a result, the department, on July 14, 1983, set aside its May 12, 1983, determination order on the ground that it had been issued in error, because claimant was not medically stationary.

On August 25, 1983, a new determination order issued, granting TTD from January 12, 1977, through September 13, 1978, and awarding 10 percent unscheduled permanent partial disability for the injury to claimant's respiratory

system. That award apparently was based on Dr. Bardana's report that, when he saw claimant on September 13, 1978, she was capable of gainful employment, provided that there was no undue exertion and that she work in a reasonably pollutant-free environment. He explained that, because of the meat wrappers' asthma, she had become permanently sensitized to lung irritants such as PVC and cigarette smoke and that she probably would remain asymptomatic so long as she avoided an environment with those triggering agents.

On November 3, 1983, the department set aside the August 25 determination order, apparently on the basis of new reports by Doctors Keppel and Colistro. In September, Keppel, after referring claimant to Colistro, a psychologist, and after receiving his report, had informed claimant's attorney that her emotional condition had had a significant negative impact both on her ability to cope with her disease and on her ability to return to gainful employment, that she was not then stable either emotionally or physically, that she was not released to return to work and that he had not released her. Colistro had reported:

"In summary, Sharon Bracke is seen as suffering from depression, which is reactive to her physical condition, as it is greatly exacerbated by her physiological symptoms. Given her emotional instability as well as her personality structure, Ms. Bracke is unable to deal with her depression on her own, and psychological or psychiatric treatment is seen as being necessary and appropriate at the present time in order to assist her in coping in a more adaptive manner and assisting her in the return-to-work process.

"* * * * *

"With regard to the reactive component of her depression, benefits should be derived in a relatively brief period."

Intertwined with the described proceedings relating to claim closure was claimant's request, in February, 1983, for a hearing on the issues of TTD, penalties and attorney fees.[1]

---

[1] In October, 1983, the referee considered Baza'r's motion to consolidate its requested claim closure hearing with the TTD hearing. Claimant opposed the consolidation, because substantial delay had already occurred in resolving the initial request for a hearing on TTD and because that delay had caused her a substantial economic hardship. The referee refused to consolidate the hearings, stating:

"Absent the financial hardship being experienced by this claimant, my decision would be to consolidate these cases * * *."

Thus, in this case we review only the orders arising from the TTD hearing.

That hearing was held on July 18, 1983. Claimant sought penalties and attorney fees for the insurer's failure to pay TTD, as well as for the insurer's failure to provide claimant with a requested medical report. After testimony, the case was continued, pending submission of additional exhibits and written closing arguments. At the time of the hearing, claimant had received no TTD benefits except the payment in April, 1983. All of the above-mentioned doctors' reports were submitted as exhibits in the TTD hearing record, which was closed December 5, 1983; the referee's opinion issued December 9.

The referee held that, once the insurer was obligated to pay TTD,[2] it could not unilaterally terminate or refuse to pay TTD unless claimant returned to her regular work, was released to return to her regular work or her claim was closed under ORS 656.268. The referee found that none of those events had occurred and accordingly ordered insurer to pay TTD from July 1, 1977, until the claim is closed. The referee also awarded penalties of 25 percent of the amounts due claimant until the date of hearing and attorney fees of $1,500.[3]

Baza'r sought Board review, contending that the period of TTD was excessive and that penalties and attorney fees were unwarranted. The Board found that claimant had never returned, or been released to return, to her regular employment. The Board also agreed with the referee that, when neither of those events has occurred, an insurer *usually* cannot terminate TTD until a determination order issues.

---

[2] It is not clear whether the referee thought that the obligation arose when the Supreme Court mandate issued, or instead arose at some other time. Although the referee correctly held that, under *SAIF v. Castro*, 60 Or App 112, 652 P2d 1286 (1982) *rev den* 294 Or 491 (1983), Baza'r had no duty to pay TTD until the mandate issued, she then stated that Bardana had authorized TTD and

"[t]he fact that Dr. Bardana did not see claimant for over a year after claimant first left work does not mean that his authorization of time loss was insufficient to trigger the insurer's duty to pay compensation, *Hedlund v. SAIF*, 55 Or App 313, 637 P2d 1329 (1981).

"Once the carrier was obligated to pay time loss, it could not unilaterally stop paying it unless claimant had returned to her regular work (as a meat wrapper), been released to return to her regular work or claimant's claim had been closed by the Evaluation Division, *Georgia Pacific v. Awmiller*, 64 Or App 56, 666 P2d 1379 (1983)."

[3] The referee also awarded attorney fees in the amount of 25 percent of the additional compensation, limited to $750. The Board did not modify that award; neither is it the subject of any argument on appeal.

However, the Board noted that this was not a usual case, because the claim had been in denied status, and stated:

"[T]he question presented is, if the claimant has not returned or been released to return to regular work and the claim has been in denied status, is the insurer upon being ordered to accept the claim required to pay time loss until a Determination Order issues if the claimant has become medically stationary in the interim?"

The Board found that claimant had become medically stationary on September 13, 1978, and that any disability she had suffered after that date was a function of her permanently sensitized condition and should be considered in evaluating her permanent disability. It then held that, once an insurer is ordered to accept a denied claim, the insurer may determine unilaterally whether a claimant has become medically stationary, pay the TTD to which it believes the claimant is entitled and request claim closure. If the Evaluation Division refuses to close the claim because the claimant is not medically stationary, the insurer may request a hearing. If the referee finds that the insurer's termination of TTD decision is unreasonable, the referee may impose penalties and attorney fees.

The Board found that this insurer had basically followed the described procedure but that its refusal to pay TTD from January 12, 1977, to September 13, 1978, was unreasonable in light of the August 25 determination order, which awarded TTD for that period. The Board ordered the insurer to pay TTD from May 15, 1977, through September 13, 1978, less time worked, assessed a penalty of 25 percent of the amount of TTD awarded by the August 25 determination order, less the three months of TTD already paid, and reduced the referee's award of attorney fees to $1,000.

As noted above, claimant makes three assignments of error. We need not address her first assignment because, after reviewing the record *de novo,* we hold that the Board erred in finding that claimant was medically stationary as of September 13, 1978.[4]

---

[4] The Board addressed the "medically stationary" issue, even though it was not addressed by the referee or raised by the parties. We have held that it may do so when the issue raised *sua sponte* is related to the subject of the hearing. *See Larsen v. Taylor & Co.,* 56 Or App 404, 406 n 1, 642 P2d 317 (1982). In some cases, however, "the proper

■ ■     A claimant is "medically stationary" when "no further material improvement would reasonably be expected from medical treatment, or the passage of time." ORS 656.005(17). A mental condition may require continuance of TTD even after a claimant has become medically stationary physically. *See Grace v. SAIF,* 76 Or App 511, 709 P2d 1146 (1985); *Rogers v. Tri-Met,* 75 Or App 470, 706 P2d 209 (1985); *Berliner v. Weyerhaeuser,* 54 Or App 624, 635 P2d 1055 (1981).

■     Assuming that claimant's *physical* condition is stationary, the reports of Keppel, the attending physician, and Colistro, the psychologist to whom Keppel referred her, demonstrate that she is still suffering from depression, as a result of her meat wrappers' asthma. Both doctors believe that claimant will improve with short-term psychotherapy. Thus, claimant was not medically stationary on September 13, 1978, and the Board erred in finding that she was.[5]

■     Because we hold that claimant is not yet medically stationary, she is entitled to TTD from May 14, 1977, (the date she stopped work as a meat wrapper) until the Evaluation

procedure would be for the Board to remand the case to the referee, ORS 656.295(5), for the taking of evidence on that issue." *Neely v. SAIF,* 43 Or App 319, 323, 602 P2d 1101 (1979), *rev den* 288 Or 493 (1980). No one has argued that the latter procedure should have been followed in this case.

[5] In finding claimant medically stationary, the Board stated:

"Giving claimant the benefit of the doubt, we find that claimant was medically stationary when she was examined by Dr. Bardana on September 13, 1978. We find that any medical treatment claimant received or disability she suffered after that date was a function of her permanently sensitized condition and should be considered in evaluating her permanent disability."

Given Colistro's uncontradicted opinion that claimant's preexisting psychological problems were exacerbated by her asthma and that she would improve with short-term psychotherapy, we are unable to determine why the Board so held, unless it was confused by the following statement of Colistro:

"At present her psychological condition is adversely affecting her recovery, reducing the threshold for respiratory disturbance and exacerbating its symptoms. However, at this juncture it would only be speculative as to the degree to which Ms. Bracke's emotional disturbance actually contributed to her physical condition since the physiologic reactions would also have significantly affected her emotional stability."

However, the question here is not whether claimant's emotional disturbance contributed to her physical condition, but the reverse, *i.e.,* whether her occupational disease materially contributed to her depression. *See Berliner v. Weyerhaeuser, supra,* 54 Or App at 626; *Patitucci v. Boise Cascade Corp.,* 8 Or App 503, 507, 495 P2d 36 (1972). Colistro did not say that it would only be speculative on that point; he stated that her physiological condition exacerbated her underlying psychological condition.

Division determines that she is medically stationary and closes her claim. *Humphrey v. SAIF,* 58 Or App 360, 364, 648 P2d 367 (1982). Because she has been able to work sporadically, the TTD will be awarded "less time worked." *See Humphrey v. SAIF, supra,* 58 Or App at 365 n 3; OAR 436-54-222(3).[6] We find, as did the referee and the Board, that claimant worked at the Chinese Village from June, 1977, to August, 1977, at the Healthway Food Store from March, 1980, to May, 1980, at the Portland Public Schools for four days in June or July, 1980, at the Gourmet Rabbit from October to November, 1980, at the Gateway Gourmet in November, 1980, and at Oregon Drapery from November, 1980 to January, 1981. The record is devoid, however, of evidence as to the amount of wages that she earned or of time worked since January, 1981. Because an award "less time worked" is based on a comparison of earning power before and after the disability, ORS 656.212;[7] OAR 436-54-222(3), we must remand the case to the Board for determination of the amount of wages she received.[8]

■ ORS 656.262(10) provides:

---

[6] OAR 436-54-222(3) provides:

"An insurer or self-insured employer shall cease paying temporary total disability compensation and commence making payment of such temporary partial disability compensation as is due from the date an injured worker accepts and commences any kind of wage earning employment prior to claim determination."

[7] ORS 656.212 provides:

"When the disability is or becomes partial only and is temporary in character, the worker shall receive for a period not exceeding two years that proportion of the payments provided for temporary total disability which his loss of earning power at any kind of work bears to his earning power existing at the time of the occurrence of the injury."

[8] This is probably why the referee stated:

"The record before me does not provide sufficient information for what periods claimant should have received temporary total or temporary partial disability after June 1977. This requires an exchange of information between the employer/insurer and claimant."

Insurer argues that claimant is not entitled to more TTD than the $1,976.04 paid on April 20, 1983, because she was released to return to work by Bardana and because she returned to her regular work after January 12, 1977, the date when the Supreme Court said that she had become disabled. Even assuming that those arguments have merit, which they do not, insurer did not cross-petition and, therefore, is not entitled to a judgment more favorable than that awarded by the Board. *R. A. Gray & Co. v. McKenzie,* 57 Or App 426, 427, 645 P2d 30 (1982).

> "If the insurer or self-insured employer unreasonably * * * refuses to pay compensation, * * * the insurer or self-insured employer shall be liable for an additional amount up to 25 percent of the amounts then due * * *."

The referee awarded a penalty of 25 percent of the amounts due claimant from June, 1977, until "the date of hearing." The Board modified the award, holding that employer was unreasonable only in refusing to pay the TTD awarded by the August 25 determination order (*i.e.,* January 12, 1977, to September 13, 1978). Because the Board's reduction of the penalty award was based on its erroneous holding that claimant had become medically stationary, we hold that the Board erred in reducing the penalty. *See Hedlund v. SAIF,* 55 Or App 313, 318, 637 P2d 1329 (1981).

However, it is unclear whether the referee meant the date of the TTD hearing (December 5, 1983)[9] or instead the date of some future hearing on claim closure. Because a penalty can be imposed only on "amounts then due," ORS 656.262(10), we assume that the referee meant the former date. In the light of our holding that claimant is not medically stationary and the fact that the claim was *open* at the time of the TTD hearing, we agree with the referee that employer has unreasonably refused to pay TTD, and we reinstate her penalty award. ORS 656.268(1),(2).[10]

■ We also reinstate the referee's award of attorney fees. ORS 656.262(10) and 656.382(1) provide for an award of attorney fees where an employer or insurer has unreasonably resisted payment of compensation. We have held that it is an

_____

[9] Although the hearing was held on July 18, 1983, the record was not closed until December 5.

[10] ORS 656.268 provides in part:

"(1) * * * Claims shall not be closed nor temporary disability compensation terminated if the worker's condition has not become medically stationary * * *.

"(2) When the injured worker's condition resulting from a disabling injury has become medically stationary, * * * the insurer or self-insured employer shall so notify the Evaluation Division, the worker, and employer, if any, and request the claim be examined and further compensation, if any, be determined. * * * If the attending physician has not approved the worker's return to the worker's regular employment, the insurer or self-insured employer must continue to make temporary total disability payments until termination of such payments is authorized following examination of the medical reports submitted to the Evaluation Division under this section."

error for the Board to reduce attorney fees based on an erroneous reduction of TTD. *Hedlund v. SAIF, supra,* 55 Or App at 318. Because the Board apparently reduced the referee's attorney fee award on the basis of its erroneous reduction of TTD, we reinstate the referee's award.

Reversed and remanded with instructions to reinstate the referee's award of penalties and attorney fees; to take further evidence of time worked since January, 1981, and of wages received since May 14, 1977; and to compute TTD.