Argued and submitted February 19, reversed; referee's order reinstated
October 15, 1986

In the Matter of the Compensation of
Nancy Bowlin, a Beneficiary of
Cordis E. Bowlin, (Deceased), Claimant.

BOWLIN,
*Petitioner,*

*v.*

STATE ACCIDENT INSURANCE FUND
CORPORATION et al,
*Respondents.*

(84-05982; CA A36672)

726 P2d 1186

Edward J. Harri, Albany, argued the cause for petitioner. With him on the brief were J. David Kryger, and Emmons, Kyle, Kropp, Kryger & Alexander, P.C., Albany.

Darrell E. Bewley, Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Richardson, Presiding Judge, and Joseph, Chief Judge, and Warden, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

Claimant filed a claim for death benefits under ORS 656.226, asserting that she and decedent, a farm worker, had cohabited as husband and wife for at least one year before and were doing so at the time of the compensable accident. SAIF denied her claim, because it believed the evidence was insufficient to establish the claim. The referee reversed the denial, but the Workers' Compensation Board reversed the referee, holding that claimant had failed to carry her burden of proof. On *de novo* review, we reverse.

ORS 656.226 provides:

"In case an unmarried man and an unmarried woman have cohabited in this state as husband and wife for over one year prior to the date of an accidental injury received by one or the other as a subject worker, and children are living as a result of that relation, the surviving cohabitant and the children are entitled to compensation under ORS 656.001 to 656.794 the same as if the man and woman had been legally married."

Claimant and decedent were never married to each other but had lived together and held themselves out as husband and wife since 1961. Claimant adopted decedent's last name, and they have three children, who were given decedent's last name. The youngest was 17 at the time of decedent's death in 1983. Before claimant and decedent began living together in 1961, he had lived with another woman, Ramo, for 10 years; they had eight children. Ramo also filed a claim for benefits under ORS 656.226, but it was denied and she did not appeal.

As a witness for respondents, Ramo suprised them by testifying that she had only filed her claim because she was mad at claimant. She said that, since 1961, she and decedent had only maintained a relationship as friends, not as husband and wife, and that claimant was the woman that decedent considered his wife. Apparently, claimant, decedent, Ramo and all of decedent's children maintained close relationships. For example, they had all spent every Christmas together as one big family, and Ramo had helped to support decedent when he was out of work. Claimant and decedent had even lived with Ramo on occasion.

Respondents argue that claimant and decedent did not live together during the year immediately before his death

or at the time of death.[1] Claimant and her daughter testified that for more than 22 years decedent had always lived with claimant, unless he was out of town seeking work as a farmworker, babysitting for a daughter, McBride, who worked night shifts, or visiting relatives in Tennessee or Washington. About five months before decedent's accident, claimant was accepted as a tenant in subsidized housing. Apparently, she was entitled to live there only if her household was limited to her and only one child. She had signed a statement that decedent was not living with her but that he only occasionally visited her. She had also signed statements for Adult and Family Services Division listing decedent as a member of her household for purposes of receiving food stamps.

Ramo testified that, while claimant was living at the housing project, decedent would stay at her house to avoid detection by the housing authority staff. She stated that claimant would often spend the night at her house with decedent or he would wait until late at night and then walk over to claimant's, a few blocks away, to spend the night. On the morning of the day of the accident, decedent walked from claimant's to Ramo's home so that he could get transportation to his farm work from a place other than claimant's home.

McBride, decedent's daughter, was also called as a witness by respondents because, in filling out the death certificate, she had used her address as his permanent address. She explained that decedent had no personal belongings at her home but frequently babysat for her children. Apparently, decedent had no personal belongings anywhere except a few clothes kept at the three women's homes. McBride also said that claimant and decedent always referred to each other as husband and wife and that the need for housing forced decedent to spend his days at Ramo's so that the housing project staff would not catch him at claimant's.

The Board concluded that it had no confidence in the veracity of the four principal witnesses in this case. It then reasoned that claimant had failed to prove that she and decedent had cohabited during the year before the accident and at the time of the accident. The Board noted, however,

---

[1] Claimant and decedent must have been "cohabiting" at the time of the accidental death for her to receive the benefits of ORS 656.226.

that the term "cohabitation" in the statute has not been construed.

Claimant argues that the Board erred in failing to give appropriate weight to the findings of the referee regarding credibility. The referee, however, made no express credibility findings. From the nature of the referee's order, we assume that he believed the four witnesses' testimony, *see Hedlund v. SAIF,* 55 Or App 313, 317, 637 P2d 1329 (1981), but, on *de novo* review, the Board neither must nor should give special weight to implied findings. Neither are we bound by the Board's refusal to accept the testimony of the four witnesses. All of their testimony was consistent, and their use of subterfuge to cheat the housing authority does not persuade us that their testimony should be disbelieved.

■      Claimant next argues that "cohabitation" under the statute should not be measured by the number of days spent at a particular location each month but by the nature of the relationship as intended by the couple and as characterized by knowledgeable others. Neither the parties nor the Board cited any authority construing the term "cohabitation" under the statute, and we have not found any. In *Wadsworth v. Brigham,* 125 Or 428, 259 P 299, 266 P 875 (1928), the Supreme Court construed the term "cohabitation" in the context of a then new statute (Or Laws 1925, ch 269), which provided:

> "In case a man and a woman, not otherwise married heretofore, shall have cohabited in the state of Oregon as husband and wife, for over one year, and children shall be living as result of said relation, said cohabitation, if children are living, is hereby declared to constitute a valid marriage and the children born after the beginning of said cohabitation are hereby declared to be the legitimate offspring of said marriage." 125 Or at 459.

The court explained that the fact that, during the required period of cohabitation, the father had rooms elsewhere did not prevent him from cohabiting with the mother, because

> "cohabitation does not mean that the parties must live together in the same room continually or occupy one room, as the essence of cohabitation is the living together and the sexual relations, and there may be some degree of living apart and an occasional trip away without destroying the relation, so that it was not a part of the plaintiff's case to prove that the

three of them were huddled in one room all the time and never departed therefrom." 125 Or at 482.

We hold that definition to be applicable under ORS 656.226. The nature of the relationship and not the number of days spent in the same location determines whether cohabitation exists.

■ Decedent and claimant lived together for 22 years, and they held themselves out as husband and wife. For whatever reasons, they were not always together every day and every night, but there is *no* evidence that they ever intended to terminate their long term relationship. For the purposes of ORS 656.226, we hold that they cohabited for at least one year before decedent's death and were doing so at the time of his death. *Amos v. SAIF,* 72 Or App 145, 152, 694 P2d 998 (1985).

Reversed; referee's order reinstated.